I represent the petitioner. I think this case also involves the first issue that we have to deal with. It's the credibility analysis. Okay, so in this case your client was found not to be credible. Yes, Your Honor. And this is the Real ID Act controls here, correct? That's right, Your Honor. And the BIA identified basically three factors. And one is omission and the other one is the fact that he represented in his assignment application he resided in Las Vegas. And the third one would be the record of border interview that he gave at the time when he was apprehended by the border patrol agent. Dealing with the record of the interview at the border, I think the BIA erred in giving the report any weight, evidentiary weight, because as pointed out in my brief that the record contains lots of errors and it has all the indiction of unreliability. It spelled the petitioner's name wrong and it spelled both petitioner's parents' names wrong. Okay, we only need one instance that's supported by substantial evidence, right? Yes, Your Honor. Well, I'm troubled by a few things in here. The petitioner left out one of two persecution incidents and details about the other incident in his asylum application. His parents failed to mention the harsher incident in their letter. Why don't those omissions seriously undermine your client's credibility? And then also, too, there was his explanation of where he lived and why he didn't appear with Las Vegas. That seemed to be fairly incredible. Okay, as to the address, Your Honor, petitioner did make, I think it's very unfair to hold it against petitioner because the petitioner made the correction before he even signed on the asylum application. I believe on page. Well, I know that you want us to leave that as outside the thing, but it is true. You'd agree with me, wouldn't you, that he listed Las Vegas as the place he lived, right? Yes, Your Honor. And he didn't live there, right? But he did stay there for a few days. He went over there for a hearing, right? Yes, Your Honor. Okay, so he responded. His attorney told him to do it and he was there to go to a hearing. They rejected that because the explanation leaves the court at a loss as to why he would say he wanted his case to be in Las Vegas. Well, when he testified that he went from Texas to New York and then straight to Hawaii, why would he want it in Las Vegas? I mean to say, well, I went there because my attorney told me to and I went over to a hearing. Why do you want it in Las Vegas? Why didn't he want you to be his attorney? You're in Hawaii. Yes, and I was. Why didn't they put Hawaii? Actually, I was his attorney. Oh, you're the attorney that told him to put Las Vegas? No, he was in Las Vegas, Your Honor. He wasn't in Las Vegas. He never lived in Las Vegas. All he did is go to a hearing in Las Vegas. I do understand, Your Honor. He said his lawyer because to convenience his lawyer, but you were here. You're in Hawaii. And you appeared by telephone? By telephone, that's right, Your Honor. Did you just want to go out there and gamble or something? Oh, I wouldn't mind going to a- He didn't go. I know he didn't go even. He even missed his trip. For the marriage hearing, I wouldn't mind going to Vegas. But in any event, as I argued in my brief, Your Honor, this is just irrelevant because even under the Real ID- Well, it's irrelevant, but now we're under the Real ID Act, so it doesn't have to have much relevance. No, it doesn't have- The Real ID says it doesn't have to go to the heart of the assignment. Okay, so it doesn't have to- But it still has to be relevant. If you look at the- That's exactly the wording of the Real ID. Well, it seems a little relevant to say where you live so you can put your stuff into action. Yeah, but- And then, in the end, petitioner did make a correction that he was residing in Hawaii before he even signed on the oath on his assignment application. All right, let's deal with the second. He gets his application. He doesn't even list that he had a confrontation in the police with 2001. Yes, Your Honor. As he testified that the 2001 encounter that he was only questioned, he was only asked- But now he wants us to rely on that, just like you did in the last hearing, about all the times he wasn't allowed to do stuff, and yet he leaves it out. He didn't. At the time, as he explained to the- So then the BIA, who has to confront, says, give me some corroborating evidence. The corroborating evidence didn't list that. The parents didn't list that. The pastor didn't list that. Yes, sir. And then this is the only- So the corroborating evidence didn't help him either. My argument to the court is this is an omission. It's not an inconsistency. But a material omission, it doesn't require only an inconsistency. If, let's say, I'm testifying that I say that my persecution was that my whole family was murdered on account of our religion, and I leave that out, that's pretty significant that I forgot that my whole family was murdered. I know his wasn't as significant, but he left out his whole first line of persecution. So an omission can be as damning what you don't say can be as damning as what you do say. Exactly. Because Real ID doesn't identify omission specifically, so we look at this court's precedent decisions in resolving this issue. Because in this court, an assignment applicant, when he failed to file an assignment application as complete as desired, should not form a basis for adverse credibility finding. Let me ask you this. You say that, but this is a little bit different than the normal application. This was filled out with the advice of counsel, correct? That's right, Your Honor. So with counsel giving him advice, he leaves these things out, and we're to say that's not significant? Well, Your Honor, I think especially in the context of an assignment application, I think the petitioner, especially the first statement should come directly from the petitioner without too much probably involvement by the attorney. That's just my practice. And then before he talked to a lawyer, when he came into the country, he said the reason he was coming was for employment. He doesn't say anything about persecution, right? Exactly. That's why I pointed out at the very beginning that the record of... Well, sometimes people are at their most credible before they talk to a lawyer. Exactly, Your Honor. The purpose of coming to this country to seek employment is not reconcilable with his desire to leave China to avoid... Well, it isn't inconsistent necessarily. It's not irreconcilable. It may, but by the same token, when you consider it with everyone else. Now, I can't remember. There was one person, too, that said they wanted to come to Hawaii because they heard there was a nice judge there. Was that your client, too? Exactly. That just shows... He wasn't talking about us, I guess, huh? That just shows his honesty. I mean, there's all sorts of things here that he seems like he's just trying to go anywhere, anything, say anything at any time, and the judge and the BIA or the immigration judge and the BIA are confronted with someone that just says whatever he thinks will work at any given time, and, you know, then you come out being a liar. As you can tell from the outcome of this case, it didn't do him any good for being honest, and then he could easily make up a story, oh, I did live in Vegas, and then that's the end of the problem. Well, but the IJ and the BIA didn't think he was being honest. That's the whole reason for an adverse credibility call. Then why wouldn't he be honest? What incentive for him to lie about his address, to lie about the fact that he wasn't living in Vegas? I mean, it just doesn't enhance his claim of asylum at all. So there's no incentive for him to lie. Let me ask you one last question. I'm going to jump to future persecution. Given that you don't challenge anything or say anything about future persecution, you only challenge past persecution, is any future persecution finding waived? No, Your Honor, because the I mean, I didn't find anything when I read through your stuff, reading pretty carefully that you even challenge anything on future persecution. Yeah, because if the petitioner is found to be credible, and then I believe the facts in this case are sufficient to support a finding of past persecution. And with the finding of past persecution, he's entitled to a regular presumption. So then if we go with you, the best we can do is find him credible, then he would have a past persecution presumption, and we have to remand to give the government the chance to rebut? Exactly, Your Honor. That's the best you can get in this hearing? I'm pretty sure my client and I will be pretty happy with that result. Okay. All right, your time's expired. Thank you. We believe you. Good morning, Paul Fiorino, for the respondent. Judge Callahan, you're correct, this is a post-Real ID Act case, and the court needs to find only one basis for adverse credibility for there to be substantial evidence. And the court's discussion has highlighted several of them, and there's nothing in this record to compel the conclusion that he is credible. So on that basis alone, the court should affirm the board's decision and deny the petition for review. Do any of the panel members have any questions? I have no questions. We don't have any additional questions. Certainly the time is yours at this point, but we don't have any additional questions. Well, the government will submit. Thank you. Thank you. All right, this matter stands submitted. The court is just going to take a five-minute recess, so don't go anywhere. We'll be back very shortly. Thank you. All rise. The court stands at recess for five minutes. The court is adjourned.
judges: Schroeder, Callahan, Smith